McGREGOR W. SCOTT
United States Attorney
MARY L. GRAD
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, California 95814
Telephone: (916) 554-2763

FILED

JUN - 5 2006

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
         DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CR-S-02-192-EJG |
| Plaintiff, ) | |
| v. ) | ORDER ON RESENTENCING |
| ROBERT W. WARREN, ) | |
| Defendants. ) | |

On April 28, 2006, the parties appeared before the Court ono the Ninth Circuit's order of limited remand pursuant to <u>United States v. Ameline</u>, 409 F.3d 1073 (9th Cir. 2005). The United States was represented by Assistant U.S. Attorney. The defendant was represented by Assistant Federal Defender Rachelle Barbour. The defendant was not present pursuant to a filed waiver of appearance.

///
///
///
///
///
///
///

1

1   For the reasons stated in the attached transcript
2 (Attachment A), had the court known at the time of imposition of
3 the initial sentence in this case that the Sentencing Guidelines
4 were advisory only, the sentence imposed would not have been
5 materially different.
6 SO ORDERED.
7 Dated:   6/5/06

EDWARD J. GARCIA
8 United States District Judge

# ATTACHMENT A

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. EDWARD J. GARCIA, JUDGE

DEPARTMENT 8, 13th Floor

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. CR. S-02-192 |
| ) | |
| ROBERT W. WARREN, ) | |
| ) | |
| Defendant. ) | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

April 28, 2006

APPEARANCES:

For the Plaintiff:   MARY GRAD
                     Assistant U.S. Attorney

For the Defendant:   RACHELLE BARBOUR
                     Assistant Federal Defender

JILL R. MCLEOD, CSR 10071, Official Pro-Tem Reporter

```
 1        THE CLERK:  Criminal S 02-192, United States vs.
 2   Robert Warren.
 3        MS. GRAD:  Good morning, your Honor.  Mary Grad for the
 4   United States.
 5        THE COURT:  Ms. Grad.
 6        MS. BARBOUR:  Good morning, your Honor.  Rachelle
 7   Barbour appearing for Mr. Warren.  He is not present.  The
 8   court has allowed him to waive his appearance.  He is
 9   currently being housed at the Bureau of Prisons.
10        THE COURT:  Ms. Barbour.  This matter is on calendar
11   after a limited remand by the 9th Circuit Court of Appeals.
12   The remand was pursuant to the Circuit's U.S. v. Amiline
13   Decision for the purpose of having the court determine if the
14   sentence imposed would have been materially different had the
15   court known that the federal sentencing guidelines at the
16   time were advisory only, and to proceed accordingly.
17        At the status conference after remand, I invited counsel
18   to file briefs giving their views on the matter and the
19   reasons therefore.  Both parties have timely responded with
20   written memoranda.
21        I have reviewed the parties' briefs and reviewed my
22   personal notes regarding defendant's initial sentencing and
23   the probation officer's presentence investigation reports.  I
24   also read the reporter's transcripts of both the entry of
25   plea and the sentencing proceedings in this case, the
```

1   original sentencing proceedings in this case.

2   Do you wish to be heard further on the motion, excuse
3   me, on the remand, Ms. Barbour?

4   MS. BARBOUR: Your Honor, I will submit it on my brief
5   that I filed last week.

6   THE COURT: Ms. Grad?

7   MS. GRAD: I will submit it, your Honor.

8   THE COURT: For the reasons that I will state now on the
9   record, I have determined the sentence of 94 months on this
10  indictment, to which I originally sentenced the defendant
11  pre-Booker, would not have been materially different had I
12  known the federal sentencing guidelines were advisory only.

13  This individual's sentence of 94 months on this
14  indictment must be viewed under the totality of the
15  circumstances, which included a global plea bargain arrived
16  at by the parties on two essentially separate cases, a
17  portion of which plea bargain the court ultimately rejected.

18  On the case before the court in Indictment
19  Number 02-0192, defendant pled guilty to a drug trafficking
20  charge which carried a statutory mandatory minimum sentence
21  of 120 months and up to life imprisonment.

22  Defendant, a major, high level drug dealer with numerous
23  arrests and convictions for narcotics and firearms violations
24  cut a deal with the Government for a sentence of one-half the
25  mandatory minimum, that is, 60-months imprisonment, in return

1  for his cooperation with the Government and in the  *EJG*
2  prosecution of others.
3       Pursuant to this plea agreement, defendant pled guilty
4  pursuant to Federal Rule 11(C)1(C) and remained on pretrial
5  release pending sentence.
6       With sentencing pending, the defendant committed and was
7  arrested for another drug trafficking offense, distribution
8  of 499.9 grams of cocaine.
9       He made a deal with the Government on this case also and
10 pled guilty to a lesser charge of use of a telephone to
11 facilitate a drug trafficking offense, which carried a
12 statutory maximum sentence of 48-months imprisonment to run
13 consecutive to the 60-months sentence he had previously
14 plea-bargained for, and agreed upon an aggregate sentence of  *EJG*
15 108 months on the two offenses.
16      The 11(C)1(C) agreement for the one-half of the   *EJG*
17 statutory minimum, *that* sentence on the first offense is the 60 months, began to unravel
18 when the probation officer, in a combined presentence
19 investigation report for the two cases, apparently mistakenly
20 recommended that the two offenses be grouped together for
21 guideline scoring purposes, pursuant to Guideline
22 Section 3(D)1.2, Subdivision D, following the general rule
23 that offenses determined largely on the basis of the *quantity of* drugs
24 involved, should be grouped together.
25      This resulted in a guideline range for the two grouped

1  offenses of 360 months to life, which threw the deal for a 5(K)1.1

2  sentence of 60 months on the first offense to run consecutive

3  with the 48 months on the second offense, into ~~which was somewhat~~

4  ~~of~~ a cocked hat.

5       After two sentencing hearings, during which I heard and

6  agreed with defendant's objections to the probation officer's

7  guideline scoring recommendations, I scored the two offenses

8  separately, so that for the second offense, and the one now

9  before the court, I arrived at a separate guideline range of

10  188 to 235 months imprisonment.  That happened also to be the

11  probation officer's recommendation originally, before the

12  defendant committed his second offense.

13       I then granted the Government's 5(K)1.1 motion and

14  departed down to 94 months, one-half of the low end of the

15  guideline range.

16       Since the Federal Rule 11(C)1(C) agreement called for a

17  60-month sentence, I gave the defendant the option of

18  withdrawing his guilty plea.  However, he declined, after I

19  told him that I was going to sentence him to 94 months, and

20  stood by his guilty plea.

21       I then entered judgment, fixing his sentence at

22  94-months imprisonment to run consecutive with the 48-months

23  sentence on the other offenses, for an aggregate sentence of

24  142-months imprisonment.

25       The reason it's important, in my judgment, to view the

1  two sentences together, that is, in the aggregate, is because
2  the 142-months imprisonment sentence, in my judgment, was an
3  appropriate sentence for defendant's total offense conduct.
4  The second offense for drug trafficking was particularly
5  egregious, being committed not only while on presentence
6  release but while, ostensibly, cooperating with the
7  Government DEA agents; and yet, the sentence of 94 months did
8  reward defendant for his cooperation, handsomely I believe,
9  albeit not as leniently as he had originally bargained for.
10      So had I known that the guidelines were advisory only
11 when I originally sentenced the defendant, I would have
12 analyzed and reasoned the sentence in this case essentially
13 the same.
14      I would have first determined the appropriate guideline
15 ranges, including the 5(K)1.1 downward departure motion,
16 determined whether there was any basis for other upward or
17 downward departures, then considered if there was any
18 justification for outside the advisory guideline variances, [EJG]
19 then considered Section 3553(A) of Title 18 U.S. Code.
20      Thus, this 94-month sentence coupled with the 48-month
21 sentence would have been within the advisory guideline range
22 and addresses relevant Section 3553(A) factors. It reflects
23 the seriousness of the offense and provides just punishment.
24 It affords adequate deterrents, both individual and general,
25 and protects the public from further crimes by the defendant;

```
 1   at least for some 16 and a half years, including the
 2   five-year period of supervised release.
 3       As for defendant's perception that the court seemed
 4   restrained by the low end of the mandatory guideline range,
 5   defendant is mistaken.  Even had the guidelines been advisory
 6   only, defendant's breach of the plea agreement in the instant
 7   case by committing the second drug trafficking offense
 8   overrode any consideration for further leniency by going
 9   below 50 percent off the low end of the advisory guideline
10   range on the Government's 5(K)1.1 motion.
11       I will ask the U.S. to prepare and submit a proposed
12   summary order of the court's decision on remand for my
13   signature.
14       Anything further for now, Ms. Barbour?
15       MS. BARBOUR:  No, your Honor.  Thank you.
16       THE COURT:  Ms. Grad?
17       MS. GRAD:  No, your Honor.  Thank you.
18       THE COURT:  All right.  Thank you, Counsel.
19       (The proceedings were concluded.)
20
21
22
23
24
25
```

```
1   STATE OF CALIFORNIA  )
                         ) ss.
2   COUNTY OF SACRAMENTO )

3

4        I, JILL R. MCLEOD, Official Pro-Tem Reporter of the

5   United States District Court, Eastern District of California,

6   do hereby certify that the foregoing pages, 1-8, comprise a

7   full, true and correct transcription of my stenographic notes

8   in the aforementioned case of the proceedings held on

9   April 28, 2006.

10

11  Dated this 28th day of May, 2006.

12

13

14                    _____

15                       JILL R. MCLEOD, CSR 10071
```